**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BLACK BEAR SPORTS GROUP, INC., and | ) | |
| CENTER ICE ARENA, LLC | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. _____ |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| AMATEUR HOCKEY ASSOCIATION OF | ) | |
| ILLINOIS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff for its Complaint against the Defendant states and alleges as follows:

**PARTIES**

1.      Black Bear Sports Group, Inc. is a Delaware corporation with a principal place of business in Chevy Chase, Maryland.

2.      Center Ice Arena, LLC is a Delaware limited liability company and is managed and wholly owned by Black Bear Sports Group, Inc.

3.      For antitrust purposes, Black Sports Group, Inc. and Center Ice Arena are a single economic entity and are hereafter referred to collectively as "Black Bear."

4.      Defendant Amateur Hockey Association of Illinois ("AHAI") is an Illinois not-for-profit corporation. Its principal place of business is 735 E. Jefferson St., Bensenville, IL 60106.

5.      AHAI was founded in 1975 as a sanctioned affiliate of USA Hockey, Inc. ("USA Hockey"), which has been appointed by Congress pursuant to the Amateur Sports Act as the national governing body for the sport of amateur hockey.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because the action arises under federal law. This Court has supplemental jurisdiction over the claims arising under the laws of Illinois pursuant to 28 U.S.C. § 1367(a).

7.     This Court has personal jurisdiction over AHAI because it may be found in this District and the conduct complained of has occurred in this District.

8.     Venue is proper in this District because AHAI may be found in this District.

## FACTUAL BACKGROUND

**A.     Description of Amateur Hockey in the United States**

9.     As the National Governing Body for the sport of amateur ice hockey in the United States, USA Hockey is the official representative to the United States Olympic Committee and the International Ice Hockey Federation.

10.     USA Hockey is responsible for organizing and training men's and women's teams for international tournaments, including the Olympic and Paralympic Winter Games and IIHF World Championships.

11.     For the purposes of promoting the sport and developing players, USA Hockey also works closely with the National Collegiate Athletic Association which is the governing body for amateur college hockey.

12.     USA Hockey has delegated some of its responsibility over United States amateur hockey to regional affiliate organizations. These organizations include twelve districts (organized geographically) which have been given responsibility for team registration, training of officials, education for coaches, and risk management. The state of Illinois is in the Central District.

13.     Each district, in turn, has member organizations that serve as the local governing body for teams and players within an assigned geography. AHAI is that governing body for the state of Illinois.

14.     USA Hockey and its designees regulate both club amateur hockey, in which participants pay fees to a private association, and high school hockey, at both private and public high schools.

15.     Participants in amateur hockey at clubs are organized by age and skill level. What is known as "youth hockey" includes individuals under 18. "Junior hockey" is for higher-skilled individuals ages 16 to 20.

16.     With respect to skill level, youth players and the teams they participate in are categorized as Tier I, Tier II, or Tier III.

17.     Youth Tier I teams are intended for the highest skill level players ages 6 to 18. These teams typically travel across the United States and to Canada to play against other teams having elite players.

18.     Youth Tier II teams are intended for individuals ages 6 to 18 and provide an opportunity to play competitive teams in their local area as well as provide opportunities, from time to time, to play other teams located outside their local area, such as in national tournaments.

19.     Youth Tier III teams are for beginning players and are intended to provide opportunities for beginner or recreational play with limited or no travel. Tier III players will typically play all games and conduct all practices at their local rink.

20.     For all Tiers, the teams are members of various approved USA Hockey "leagues." For example, six of the most competitive Youth Tier I teams are members of the High

Performance Hockey League which has three teams from the Chicago-area and three from the Detroit-area and requires significant travel.

21.     For Tier II youth hockey clubs in Illinois, there are two leagues that AHAI member teams compete in: The Northern Illinois Hockey League is the largest with divisions for various ages and skill levels; and the Central States Developmental Hockey League which is restricted to the highest level Tier II players and has member clubs in other states, including Arizona, Colorado, and Missouri.

22.     The description in paragraphs 15 to 21 of how amateur hockey is organized in the United States set is further depicted in the following graphic.



**B.**     **AHAI's Control Over Amateur Hockey in the Relevant Market**

23.     AHAI's mission is to provide an opportunity for individuals to participate in amateur hockey. AHAI sponsors tournaments and provides clinics for players and coaches. Pursuant to the authority delegated to it by USA Hockey, AHAI establishes rules and standards that govern the conduct of amateur hockey in the state of Illinois.

24.     In the state of Illinois, virtually every organized amateur hockey team, including Tier I, Tier II, and Tier III teams, and virtually every high school hockey team, is a member of AHAI.

25.     Each AHAI member team is subject to AHAI's By-Laws and Rules and Regulations.

26.     AHAI ensures compliance with its By-Laws, Rules, and Regulations in various ways. One means of AHAI enforcement is to sanction teams, players, and referees that participate in games with a team that is not registered with AHAI or another charted governing body.

27.     The sanctions include loss of eligibility to participate in AHAI sponsored tournaments, loss of insurance coverage, and revocation of membership.

**C.**     **Description of Amateur Youth Hockey in the Relevant Market**

28.     Registration information for USA Hockey, summarized in the following table, shows that amateur hockey is growing in popularity in the United States.

**Growth of Under-18 USA Hockey Participation**

|  | **Illinois** | **All States** |
|---|---|---|
| 2013-14 Season | 19,688 | 351,890 |
| 2014-15 Season | 21,627 | 358,744 |
| 2015-16 Season | 22,507 | 364,489 |
| 2016-17 Season | 22,373 | 374,775 |
| 2017-18 Season | 23,346 | 382,514 |
| **Change 2013 to 2017** | **18.58%** | **8.70%** |

29.     This data shows that over the last five years, participation nationwide among youth players has increased by almost nine percent. The data also shows that youth amateur hockey is growing at an even faster rate in Illinois, with growth in excess of eighteen percent over the last five years.

30.     Currently, there are almost fifty Tier II hockey clubs in the Northern Illinois region. AHAI has approved these teams to participate in competitive play – i.e. between clubs. The clubs in this region and their "home ice" are shown in the table attached at **Exhibit 1**.

31.     Each of these clubs has between ten and thirty teams, with each team having between twelve and eighteen players of similar age and skill level. Typically, each club would have total membership between approximately 120 and 350 players.

32.     The demand for Tier II play is sufficiently high enough in the Northern Illinois region that teams regularly travel in excess of fifty miles from Chicago to play other AHAI approved teams.

33.     However, despite the significant growth in participation and demand for Tier II play over the last five years, AHAI has not approved a single new Tier II club during this period.

34.     Moreover, although the demand for Tier I play in Illinois is comparably strong, AHAI has not allowed supply of Tier I clubs to increase. Currently, there are only four Tier I

youth hockey clubs in Illinois of which all are located in the Chicago-area. This yields a ratio of one Tier I club to every 5,837 players in the state of Illinois.

35.     In contrast, for example, although participation rates are lower in Pennsylvania and New Jersey, each state has at least eight Tier I youth clubs. This yields a ratio of one Tier I club for every 2,201 youth players.

36.     AHAI's restrictions on the supply of competitive play have affected the price of play. By way of illustration, participation costs at Tier I clubs in Illinois are as much as twice the participation cost of participation in Pennsylvania and New Jersey.

**D.     Black Bear Sports Programming Efforts**

37.     Black Bear's mission is two-fold. First, Black Bear purchases undermanaged and underperforming ice rinks to bring professional management and provide capital for improvements to extend the ice rink's useful life.

38.     Black Bear's other mission is to develop individual hockey players and teams so that participants are able to reach their highest potential as youth hockey players.

39.     Black Bear owns and operates ten ice rinks in the United States, including four rinks located in Glen Ellyn, Woodridge, Lincolnwood, and Crestwood, Illinois.

40.     Black Bear also manages amateur junior and youth hockey teams throughout the country which use its rinks for practice and as their home rinks in competitive leagues.

41.     The services that Black Bear provides to youth hockey participants include individual and team coaching services, clinic training, conditioning, and arrangements for players to participate in competitive games and tournaments.

42.     The youth and junior hockey teams managed by Black Bear in other markets include the Mercer Chiefs (Tier I & II youth, New Jersey), the Jersey Shore Wildcats (Tier II

youth, New Jersey), Youngstown Phantoms (Junior Hockey, member of the United States

Hockey League), Maryland Black Bears (Junior Hockey, member of the North American

Hockey League), and Team Maryland (Junior Hockey, member of the Eastern Hockey League).

Each of Black Bear's teams has been approved to play by its local governing body.

43.     The sources of revenue at Black Bear's rinks include private ice rental income for

amateur hockey and figure skating, admission fees from public skating, and amateur hockey club

participation fees.

**E.     Black Bear Is Trying To Expand Opportunities for Tier II Hockey in the Relevant Market**

44.     In 2016, Black Bear began acquiring and improving ice rinks in the Chicago area

which were underutilized or in need of repair and improvement.

45.     First, in 2016, Black Bear acquired the Seven Bridges Ice Arena in Woodridge,

Illinois. Since this acquisition, Black Bear has made approximately $800K in improvements.

This facility serves as the home ice for Team Illinois, a Tier I youth club.

46.     Black Bear also acquired the Heartland Ice Arena in Lincolnwood, Illinois. Since

this acquisition, Black Bear has made approximately $1.0 million in capital improvements. This

facility serves as the home ice for the Chicago Bulldogs, a Tier II youth club.

47.     Black Bear also acquired the Southwest Ice Arena in Crestwood, Illinois. Black

Bear is currently in the process of planning improvements to this facility. This facility serves as

the home ice for the St. Jude Knights, a Tier II youth club.

48.     Black Bear has also acquired the Center Ice facility in DuPage, Illinois. Black

Bear has made approximately $1.5 million in capital improvements to this facility.

49.     The Center Ice facility is underutilized. Currently, Black Bear is restricted to

sponsoring an in-house, non-travel recreational league at this facility, as Black Bear does at its

other facilities. The facility has a robust learn-to-skate and learn-to-play hockey program which at their peak season can have 300 to 400 combined participants.

50.     However, to meet the growth in demand for Tier II youth hockey in the relevant market, and to maximize use of the Center Ice facility, Black Bear has attempted to obtain a charter from AHAI to sponsor a new Tier II club whose home ice would be this facility. This charter would serve the needs of participants in Center Ice's existing learn-to-skate and learn-to-play hockey programs as well as other players in the relevant market.

51.     As demonstrated by its successful programs in other markets, Black Bear has the resources, experience, and know how to sponsor a Tier II youth club at the Center Ice facility to participate in the Northern Illinois region.

52.     Absent a charter from AHAI to operate a Tier II club at its Center Ice facility, Black Bear's revenues are lower than they would be if a Tier II club used the Center Ice facility as its home rink. Learn-to-skate and learn-to-play hockey participants who now use the Center Ice facility and wish to participate in Tier II hockey must travel to and use other ice facilities.

**F.      AHAI's Actions to Prevent New Entry**

53.     Beginning in or around January 2018, Black Bear approached AHAI about obtaining approval for a new Tier II club at the Center Ice facility.

54.     The new supply of a Tier II youth club to the relevant market will provide multiple benefits for individuals who are currently playing Tier II youth hockey but (a) do not believe that they are receiving adequate coaching and management services from their current club, (b) reside close to the Center Ice facility and want to reduce the travel time to their home rink, (c) believe that they are not getting enough practice time on their current team and want to transfer clubs, or (d) are seeking a lower price alternative.

9

55.     The new supply will also provide benefits to individuals who want to participate in Tier II youth hockey but cannot because the costs of participation or the costs of travel (or both) prevent them from participating.

56.     With respect to the issue of the costs of participation, the prices charged by existing teams Tier II clubs in the relevant market are substantially higher than the prices charged by youth clubs that use other Black Bear rinks in comparable markets, including Maryland, Pennsylvania, and New Jersey.

57.     The Tier II youth hockey participation fees that would be charged by Black Bear would be lower than prices charged by existing clubs in the relevant market.

58.     However, faced with this potential competition, AHAI has enacted rules and is taking other actions to prevent Black Bear from entry into the relevant market.

59.     AHAI has told Black Bear that a Tier II club at Center Ice of DuPage is unnecessary and that there are already enough teams in the relevant market.

60.     However, there has been substantial growth in the demand for youth hockey and the current supply of Tier II clubs is not meeting demand.

61.     Black Bear has also been told that it cannot start a new Tier II club because it is a for-profit enterprise and AHAI rules require sponsors to be charitable organizations. [AHAI Rule 19.7.2].

62.     This rule lacks any procompetitive justification as demonstrated by the lack of universal adoption of a non-profit rule among other local governing bodies within USA Hockey. Nor is the non-profit status of AHAI approved clubs serving to reduce prices for participants.

63.     AHAI has claimed that Tier II hockey is community-based. However, AHAI Tier II clubs span across many counties in Illinois and are permitted to compete in leagues having teams in other states, including Arizona, Colorado, Indiana, Missouri, and Wisconsin.

64.     The AHAI pre-determination that it will not grant a charter is further demonstrated by its handling of the Tier II application process and the application itself.

65.     Despite repeated requests, AHAI only provided a copy of its application to Black Bear following a demand by Black Bear's counsel. A copy of the application is attached as **Exhibit 2.**

66.     On its face, the application demonstrates that AHAI will not grant Black Bear's application and this dispute is ripe. The application requires that an AHAI club must be a not for profit. (Exhibit 2, § 7).

67.     Other components of the AHAI demonstrate that Black Bear's completing the application would be futile and that this dispute is ripe. As one example, the application shows that AHAI requires an applicant to have five years' experience with players in the local region. (Exhibit 2, §§ 5, 6 (requiring information on past players)).

68.     The application also demonstrates the anticompetitive purpose and intent of AHAI to deny any additional Tier II applications and entry of Tier II clubs. The application requires the applicant to consider the effects of the new club on existing clubs. (Exhibit 2, § 13)

69.     The anticompetitive purpose and intent of AHAI to deny any additional Tier II applications and entry of Tier II clubs is further demonstrated by a comparison of the AHAI application to the application from other governing bodies. For example, the application form of the Atlantic Amateur Hockey Association, another USA Hockey local governing body contains

none of the requirements of AHAI in respect to other existing teams. A copy of this application is attached at **Exhibit 3**.

**G.     Other AHAI Misconduct and Injury to Black Bear**

70.     Since Black Bear's arrival in the relevant market, AHAI has misused its regulatory authority to injure Black Bear.

71.     In another attempt to maximize the use of the Center Ice facility, Black Bear arranged to have an existing Tier II club, the Chicago Bulldogs, use the facility as so-called "additional ice" and club expansion to meet the growth demands of youth hockey in Illinois. Black Bear would have derived ice rental income from the use of its facility by the Chicago Bulldogs club.

72.     However, in early 2018, upon learning that the Chicago Bulldogs intended to use the Center Ice facility, AHAI promulgated a new by-law (1.2.5) that prevents a Tier II team from using ice facilities more than fifteen miles from its home rink. Center Ice is located approximately 24 miles from the Bulldogs current facility.

73.     This rule demonstrates AHAI's intent to maintain its monopoly power and to injure Black Bear.

**H.     The Relevant Market**

74.     The relevant product market consists of the coaching and management of amateur, competitive youth hockey for individuals ages 6 through 18 known as Tier II youth hockey.

75.     The relevant geographic market consists of the counties in which existing Tier II youth hockey clubs currently reside as identified in **Exhibit 3**.

76.     AHAI's share of the relevant market is 100%, or nearly 100%, as it is the only organization capable of granting Black Bear or any organization a charter to sponsor, coach, and manage a Tier II club having teams that would participate in competitive play with other Tier II teams.

## COUNT I
### (Violation of the Sherman Act, 15 U.S.C. § 2)
### (Monopolization)

77.     Black Bear incorporates the previous allegations set forth in paragraphs 1 to 76.

78.     The conduct of AHAI to promulgate the exclusionary rules and refusal to allow Black Bear to establish a Tier II team is being undertaken to attempt to monopolize or maintain the monopoly over the relevant market in violation of 15 U.S.C. § 2.

79.     The conduct of AHAI results in, among other effects, youth hockey families and players paying prices for youth hockey programming which are higher than if those families and players had the ability to obtain competitive services through Black Bear and others, and the selection of youth hockey programming services are lower than they would be if the restriction on competition unlawfully imposed by AHAI.

80.     AHAI's conduct has and will continue to cause harm to competition in the marketplace and to the business and property of Black Bear in violation of Section 2 of the Sherman Antitrust Act.

81.     As a result of AHAI's conduct, Black Bear has been damaged in its business and property and is entitled to recover treble damages in an amount to be determined at trial plus attorneys' fees and costs pursuant to 15 U.S.C. § 15.

## COUNT II

### (Violation of 740 ILCS 10/3(3))

82.     Black Bear incorporates the previous allegations set forth in paragraphs 1 to 76.

13

83.     The conduct of AHAI to promulgate the exclusionary rules and refusal to allow Black Bear to establish a Tier II team is being undertaken to attempt to monopolize or it maintain the monopoly over the relevant market in violation of 740 ILCS 10/3(3).

84.     The conduct of AHAI results in, among other effects, youth hockey families and players paying prices for youth hockey programming which are higher than if those families and players had the ability to obtain competitive services through Black Bear and others, and the selection of youth hockey programming services are lower than they would be if the restriction on competition unlawfully imposed by AHAI.

85.     AHAI's conduct has and will continue to cause harm to competition in the marketplace and to the business and property of Black Bear in violation of 740 ILCS 10/3(3).

86.     As a result of AHAI's conduct, Black Bear has been damaged in its business and property and is entitled to recover treble damages in an amount to be determined at trial plus attorneys' fees and costs pursuant to 740 ILCS 10/7(2).

## COUNT III

### (Tortious Interference with Prospective Business Relations)

87.     Black Bear incorporates the previous allegations set forth in paragraphs 1 to 76.

88.     Black Bear has a reasonable expectation of business relations with youth hockey participants for competitive youth hockey that currently engage or have engaged Black Bear to provide youth hockey coaching and player development services.

89.     Black Bear has a reasonable expectation of business relations with youth hockey participants and clubs that currently engage or have engaged Black Bear to provide ice rental.

90.     AHAI is aware that Black Bear has prospective economic relationships with these customers.

14

91.     With full knowledge of those prospective economic relationships, AHAI has, and continues to intend to tortiously and purposely induce Black Bear customers to terminate their agreements and prospective economic relationships with Black Bear.

92.     This interference is wrongful and unjustified.

93.     As a direct and proximate cause of the AHAI's wrongful conduct, Black Bear is entitled to recover damages in an amount to be determined at trial.

**COUNT IV**
**(Request for Injunctive Relief in relation to Counts I and II)**

94.     Black Bear incorporates the previous allegations set forth in paragraphs 1 to 76.

95.     AHAI's violations of the Sherman Antitrust Act, 15 U.S.C. §2 and 740 ILCS 10/3(3) each entitles Black Bear to permanent injunctive relief to permanently prevent and restrain the AHAI's efforts to maintain a monopoly.

96.     Unless restrained, AHAI will continue with its monopoly over youth hockey programming in the relevant market, thus precluding Black Bear from entry.

97.     Prompt injunctive relief from this Court is required to allow Black Bear to conduct training and tryouts in preparation for the 2019-2020 season which begins in September 2019.

98.     Accordingly, on Count I of the Complaint, and additionally or alternatively on Count II of the Complaint, Black Bear requests an Order in favor of Black Bear and against the AHAI for permanent injunctive relief directing AHAI to allow Black Bear to sponsor a Tier II team.

WHEREFORE, Black Bear further requests relief from this Court as follows:

a.      On Count I the Complaint, judgment in favor of Black Bear and against the AHAI for treble its damages in an amount to be determined at trial, plus interest and all

costs and disbursements, including reasonable attorneys' fees, in having to prosecute this matter.

b.    On Count II the Complaint, judgment in favor of Black Bear and against the AHAI for treble its damages in an amount to be determined at trial, plus interest and all costs and disbursements, including reasonable attorneys' fees, in having to prosecute this matter; and

c.    On Count III of the Complaint, judgment in favor of Black Bear and against the AHAI for its damages in an amount to be determined at trial, plus interest and all costs and disbursements.

**JURY DEMAND**

Black Bear demands a trial by jury for all issues triable by a jury

Dated: December 20, 2018          BLACK BEAR SPORTS GROUP, INC.
Chicago, IL

By:    /s/ *Paul Olszowka*
One of its attorneys

Paula Jacobi (ARDC No. 1311247)
Paul Olszowka (ARDC No. 6291267)
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Tel. (312) 357-1313
Paula.Jacobi@btlaw.com
Paul.Olszowka@btlaw.com

13706292v3