

CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 19-2076 & 19-2450

BLACK BEAR SPORTS GROUP, INC., and CENTER ICE ARENA, LLC,

        *Plaintiffs-Appellants*,

*v.*

AMATEUR HOCKEY ASSOCIATION OF ILLINOIS, INC.,

        *Defendant-Appellee*.

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18 C 8364 — **Matthew F. Kennelly**, *Judge*.

_____

ARGUED DECEMBER 2, 2019 — DECIDED JUNE 22, 2020

_____

Before BAUER, EASTERBROOK, and SYKES, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Organized amateur hockey leagues in the United States come under the purview of USA Hockey, Inc., which is subject to the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. §§ 220501–43. USA Hockey delegates most of its authority to state and regional affili-

ates. Since 1975 Amateur Hockey Association of Illinois (the Association) has governed the sport in that state.

Black Bear Sports Group, which owns skating rinks in Illinois, contends in this suit under §2 of the Sherman Antitrust Act, 15 U.S.C. §2, that the Association is monopolizing the sport. But Black Bear does not claim to have paid monopoly prices. Nor does it seek an order dissolving the Association and allowing free competition. Instead it asked the district judge to order the Association to admit it as a member and permit it to sponsor a club, which would use the Center Ice Arena in Glen Ellyn as its "home ice", and to pay damages for business losses suffered until these things occur. In other words, Black Bear wants to use the Sherman Act to compel a cartel to admit a new member and distribute the monopoly profits differently.

The oddity—indeed impossibility— of this request seems to have been lost on the litigants, though many decisions have held that the Sherman Act cannot be used to regulate cartels' membership and profit sharing. See, e.g., *Four Corners Nephrology Associates, P.C. v. Mercy Medical Center*, 582 F.3d 1216, 1225–26 (10th Cir. 2009); *Daniel v. American Board of Emergency Medicine*, 428 F.3d 408, 440 (2d Cir. 2005) ("[P]laintiffs cannot themselves state an antitrust injury when their purpose is to join the cartel rather than disband it."). At least one district judge in a suit similar to this has grasped the point. See *Reapers Hockey Association, Inc. v. Amateur Hockey Association Illinois, Inc.*, 412 F. Supp. 3d 941, 956 (N.D. Ill. 2019) ("And lost cartel profits are insufficient because 'a producer's loss is no concern of the antitrust laws, which protect consumers from suppliers rather than suppli-

Nos. 19-2076 & 19-2450 3

ers from each other.'") (citing *Stamatakis Industries, Inc. v. King*, 965 F.2d 469, 471 (7th Cir. 1992)).

Instead of summarily tossing the suit for lack of antitrust injury, see *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977), the district judge dismissed the complaint for lack of Article III standing. Black Bear lacks standing, the judge wrote, because it has not exhausted private remedies by asking the Association for admission and being turned down. 2019 U.S. Dist. LEXIS 78770 (N.D. Ill. May 9, 2019).

Black Bear wants to sponsor a Tier II team at the Center Ice Arena rink. It complains that the Association makes this impossible by limiting sponsorship to nonprofit entities. The district judge thought that the absence of a formal application to the Association made the claim too speculative. Yet the Association's rules say that a sponsor's nonprofit status is essential. Article 19 states that "[e]xcept as set out in the [Association] By-Laws, Rules and Regulations, each Affiliate shall have a corporate structure and at all times maintain a tax exempt status under Section 501(c)(3) of the Internal Revenue Code". The Association has not pointed to anything in its bylaws that would make an exception for Black Bear. The Constitution does not require a potential litigant to butt its head against a wall as a condition of standing. Black Bear does not fear a potential future injury; it contends that it suffers an *ongoing* injury—it wants to sponsor a team but can't. That sets up a justiciable controversy. Asking the Association for a dispensation might be a means to mitigate damages, but mitigation is not a necessary component of justiciability.

The Constitution of the United States does not establish a general exhaustion-of-private-remedies obligation. No more

Case: 1:18-cv-08364 Document #: 42 Filed: 07/14/20 Page 4 of 5 PageID #:501
Case: 19-2076 Document: 00713543836 Filed: 06/02/2020 Pages: 5

4 Nos. 19-2076 & 19-2450

does the Sherman Act. The statute's text does not require or hint at exhaustion of nonjudicial remedies. The district court did not cite, and we could not find, any decision by the Supreme Court or any court of appeals creating such a requirement.

In other branches of the law, the Justices have held that exhaustion is mandatory only if required by statute. See, e.g., *Patsy v. Board of Regents*, 457 U.S. 496 (1982) (exhaustion not required in litigation under 42 U.S.C. §1983). Cf. *Jones v. Bock*, 549 U.S. 199 (2007) (when exhaustion is required by statute, the subject is an affirmative defense rather than a topic that must be addressed in the complaint as a condition to litigation). Principles of abstention, along the lines of *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941), do not apply to disputes among private litigants. Judges can and regularly do interpret documents such as the Association's rules without first asking one of the litigants to seek extrajudicial relief. So we conclude that Black Bear's decision not to pursue whatever remedies it may have within the Association does not foreclose this suit.

There is, however, a genuine jurisdictional problem. It takes a non-frivolous federal claim to support the arising-under jurisdiction of 28 U.S.C. §1331. The Sherman Act claim is frivolous, perhaps better called perverse, for the reason given in this opinion's third paragraph. If Black Bear wanted the Association dissolved or demoted to an advisory capacity, and competition among leagues or sponsors made the norm in amateur hockey, that would be a genuine antitrust claim, but it does not appear to want anything of the sort.

If Black Bear has a serious grievance, it arises under the Illinois law of private clubs. The Association is organized as

Case: 1:18-cv-08364 Document #: 42 Filed: 07/14/20 Page 5 of 5 PageID #:502
Case: 19-2076   Document: 00713543836   Filed: 06/02/2020   Pages: 5

Nos. 19-2076 & 19-2450 5

a not-for-profit corporation. Members and potential members can enforce (or contest) its rules as a matter of state law, though a private group receives considerable leeway in the interpretation and application of those rules. See *Van Daele v. Vinci*, 51 Ill. 2d 389 (1972); *Finn v. Beverly Country Club*, 289 Ill. App. 3d 565, 568 (1997). Black Bear also asserts a claim under state antitrust law. But it invokes the supplemental jurisdiction of 28 U.S.C. §1367, not the diversity jurisdiction of 28 U.S.C. §1332. Because the federal claim fails, any state-law claims belong in state court. See §1367(c)(3).

The judgment of the district court is modified to provide that the suit is dismissed for lack of a plausible federal claim and as so modified is affirmed.

Black Bear's second appeal (No. 19-2450) concerns the district court's denial of a motion to supplement the record. Such a procedural order is not appealable separately from the merits. It is reviewable, if at all, by a motion under Fed. R. App. P. 10(e)(2)(C) and Circuit Rule 10(b). Black Bear did not seek relief in this court under Rule 10, and at all events the disputed document is irrelevant to the appropriate disposition of the merits. Appeal No. 19-2450 is dismissed for want of appellate jurisdiction.